Case number 19-3896, Lewis Akrawi v. Merrick Garland. Oral argument is not to exceed 15 minutes per side. Ms. Driver for the petitioner. You're muted, Ms. Driver. I am so sorry. If you'll please support, I'd like to reserve three minutes for rebuttal and use 12 minutes for my opening statement. This case is virtually identical to two cases that have come before the Sixth Circuit already. One of which is a public decision that's referenced in our papers called Marcus v. Barr. And in that case, the issue that the case revolved around was whether it was improper for the BIA not to remand the case back to the immigration court based on new information that had been submitted by the plaintiff to get the case remanded. And in that case, the decision that was made by the immigration judge and by the BIA was based on 2016 Department of State country condition reports on human rights and the 2016 International Freedom Report, also published by the Department of State. The new information that was provided in that case and was provided in this case was the 2017 DAS human rights report and the 2017 DAS report on international religious freedom. And in both cases, the person who was asking for relief under CAP was an Iraqi Christian who was facing deportation as part of a group of Iraqis who were being deported under a new agreement that had been worked out between the U.S. government and the Iraqi government. And one of the things that the court pointed to in Marcus was that first, that there were changes that were apparent in the 2017 government, DAS government reports that were pertinent to the situation and that said, that made clear that the case needed to be remanded. And for example, the 2016 report stated that there would be a government investigation of problems dealing with the government's impunity in terms of following the law and the government's acceptance of attacks by its own forces against Christians and other Iraqis. And in the 2017 report, the U.S. Department of State makes clear that yes, there was an investigation, yes, results of that investigation were published, but that there were two things that came out in that report. One, that the government was still acting with complete impunity, so there had been no bettering of the situation. And second, that for the first time, specifically, the popular militia, the PMF forces in Iraq were cited as being responsible. They were part of the Iraqi military, were cited as being responsible for attacks against Christians. The second thing was that the immigration judge's decision really relied on the testimony of several government witnesses. And just to quote from the decision, the IJ's decision, the IJ said that in this case, Mr. Christian, because one of the government experts said that those who target Christians in Iraq can expect to pay the full penalty of Iraqi law. But in the 2017 DAS report, it discusses seizures by the PMF of Christian land holdings and impeding the return of Christians in Iraq who are trying to return to their homes that they had to abandon under the ISIS attack. Another one of the government witnesses cited in the IJ's decision said that the Iraqi government worked to secure Christian churches and Christian neighborhoods. And the International Freedom Report of 2017 made clear that that is not true, that in many instances they were stopping people, were acting in many instances as kind of a gang that were seizing Christian land holdings and making it their own. And then just a third point on the government itself and reliance on the government, which again, a couple of the experts cited as reasons why Mr. Akrawi would not, should not fear going back to Iraq, but also why Kat wouldn't be applicable. There was a lot of faith. Mr. Schreiber, I wanted to ask you, I mean for me the question is whether or not the explanation in its decision that it had reviewed these reports, I guess the 2017 reports. And there's a, I've got a, I'm seeing a paragraph here. I mean what more, I mean the BIA is saying that they know that the reports continue to report a remarkable negative shift from the reports examined by the IJ, which presumably were like the 2016 reports. So I guess what I'm trying to get at is what more did the BIA need to say other than what it said to have reflected the fact that it properly considered the newer reports? I think there's a dissent in this case by one of the BIA judges. And she states in her dissent that the recent country condition reports of his quoting and background information submitted on appeal do appear to suggest increasing harassment and abuses of Christians, particularly in the Christian majority, minimal or plain. And that accordingly, as a minimum, therefore she would send the case back to the IJ to find her facts. And there's the first, for the majority, the standard that's used, which is a remarkable negative shift. This is not the right legal standard. Mr. O'Crowley was not responsible for showing a remarkable shift. He was responsible for showing a shift, a material shift in country conditions that could have made the IJ come to a different conclusion. And in this case, that would have meant rejecting the findings that he had based the decision on that were from the various experts because either those experts had changed their minds or because the new information published in the DASA reports, which are considered to be the highest source of information, the gold standard, no longer reflected what those experts said. And I just say that in Marcus, again, the court points out that even though the BIA stated that it found some negative shift in including facing harassment and abuse in a very similar language to what's in this decision, that that wasn't a sufficient explanation for why, for what it had considered in the 2017 reports that it found to be unremarkable. And on the question of the government shift in Iraq so that the government became headed by Mustaq's daughter, one of the government experts who has praised the Iraqi government as of the time of the 2017 calls the new head of Iraq and calls him a murderer, a liar, says that he's someone that the U.S. should not trust under any circumstances. And that's a very different portrayal of the government and what it can provide in the way of assurances that there won't be harassment and attacks against Christians, mounting attacks, that could alter the decision of the IGN. So I think that it's, I think in Marcus, as in this case, the majority have a responsibility to explain why it was that the information contained in the 2017 report was insufficient to warrant remand, especially given that there's a dissent in the case. That, to me, that means that there's a lot of discussion about this issue and that there were obviously two different positions taken and that the majority had an obligation to do more than to think that it didn't find the conditions remarkable, which as I said was the wrong standard, but that they did not find that since the hearing the conditions had not changed significantly enough. So, that's what I would say on those two, on those two issues. So you're asking, consistent with the Marcus case, that we remand. Are you, and then what about the merits? Do you have an argument on that or is it the remand? I think we have an argument on the merits. I do think that the IJ in making his original decision ignored the discrepancies between what was in the 2016 report and what the government experts were saying, whereas the experts that were proffered by Euster Crowley, their testimony was completely consistent with what's in the 2016 reports. So, we're asking for both. I think that I would say that where our case is spot on in terms of Marcus is on the question of remand. And so, we're asking for both considerations by the court. Thank you. The, on the issue of the merits of the case, there were several things that the immigration I'm going to interrupt you just to say that your time's up. You still have your rebuttal. Okay. If you want to make a quick point now, that's fine. But don't launch into a full argument. Okay. I'll go through a rebuttal. Thank you, Judge. Good afternoon. Lindsey Bick on behalf of the Attorney General. The court should deny the petition for review in this case for three main reasons. First, substantial evidence supports the agency's very thorough decision to deny deferral removal under the Convention Against Torture. Second, the board did not abuse its discretion when it recently explained its denial of Euster Crowley's remand request. And third, the agency's treatment of the State Department reports and witnesses was not a violation of due process. So, with respect to my first point, I'd like to note that Euster Crowley confirmed the this is a highly deferential standard, meaning that those findings stand, the agency findings stand, unless a reasonable adjudicator will be compelled to find otherwise. So, Mr. Arkwawi must prove that the agency's factual determination was so incorrect that any reasonable adjudicator would side with him. And he can't do that here. Like the petitioners in Marquez, Al-Khoury, Abdullah, Haid, and Salaka, all of his court's Mr. Arkwawi presented some evidence that supported his claims. But at the end of the day, he has little to no experience on the ground in Iraq. What experience he does have is from more than 50 years ago. And so what we have here is a battle of the experts. And he presented his own witnesses, and the government also presented its own experts' declarations that rebutted his claim. And as this court said in Al-Khoury, a very similar case involving someone being removed from Iraq, when the evidence could reasonably point in either direction, the court must defer to the agency's choice. And so this court's decision in Al-Khoury is very instructive on that point. And in Al-Khoury, both the 2016 and 2017 Department of State reports were before the IJ, and the IJ made several critical claims about why he would face torture. And this court found the same arguments concerning fear of militia groups, the PMF, fear of being singled out as a westernized individual or a deportee from the U.S. Those were all rebutted by the evidence in that case, which again is nearly identical to the case we have here. And so what Mr. Arkwawi essentially is asking this court to do is to reweigh the evidence, engage in this battle of the experts, and the court should not do that. The court declined that invitation in Marcus and in Abdullah. And while in Marcus, this court did conclude that remand was warranted. It nevertheless found among the merits that substantial evidence supported the finding that Petitioner failed to show he would more likely than not face torture based on his status as a calling Christian. And in each case following Marcus, this court has found the agency's decision denying capture was supported by substantial evidence and that where it was requested, remand was not warranted. And moving on to the remand piece in this case. Let me just interrupt you for a minute on the merits. How did the IJ and the BIA deal with the criminal aspect? His claim that he was going to face torture because of the fact that he's a recognized criminal? Yes, Your Honor. It appears that in the Warren decision, there's not much on that. But in the IJ decision, which I do have in front of me here, the IJ found that his fear of being singled out as an American was rebutted by the expert testimony. And so his fear of being, I guess, his no variety, not necessarily his criminal background, but his claims of no variety as someone who was anti-Saddam and anti-the Baptist, those were rebutted by the witness testimony where his own witness only could cite to knowing one person who was in Iraq and would go back and forth from Iraq to the U.S. And didn't face any harm that we could tell from going back and forth. And also, the IJ cited several news reports of anti-Saddam prime minister candidates who had similar backgrounds of anti-Saddam activity to Mr. Ebrahim. And they were still candidates for prime minister. So in that respect, the IJ and the board dealt with his claims of no variety and found that evidence was not sufficient on that point. What about the criminal aspect? The criminal aspect, I know it was discussed in the body of the facts, but I don't have it in front of me how the IJ dealt with that. Okay. The IJ did find that the lack of IDs would not necessarily be sufficient evidence of harm rising or didn't show it through a more likely face torture. But admittedly, it is not discussed very fully. Thank you. So moving on to the question of remand. And if the board's denial of remanding this case on the basis of the submission of the 2017 reports. So the board did not abuse its discretion here because it provided an adequate explanation for why it found the reports to not show material change in country conditions. And in its explanation of why it found that evidence didn't meet that standard, it said that the documents showed no remarkable negative shift. Now, when the board said this, it wasn't applying a different standard. It recognized in its decision that the standard was material change in country conditions. And then it used this term, remarkable negative shift, as part of its discussion for why it found its comparison of the 2016 and 2017 reports to not meet the standard. So I think petitioners' argument in that respect is either incorrect or just a misreading of the board decision. And our position is that the board has fully explained its denial of remand and it has provided an adequate justification for judicial review in its portion of the decision that references the 2017 report. And this case is distinguishable from Marcus, where remand was granted. Because in Marcus, the board had simply made a false statement of denial and did not discuss the 2017 report. And the same goes, this case is distinguishable from Eshaq, where in Eshaq, I believe in that case, did not discuss the 2017 report. So here, we do have an analysis that provides an adequate justification for judicial review. And so remand is not warranted here. And so petitioner also makes a due process violation that I just would like to touch on in the remand. So basically, to show a due process violation, and this is with respect to the treatment of the witnesses, Heller and Smith, to show a due process violation, he has to show there was some defect in the proceeding and that he was prejudiced by it. And first, we would contend that there was no defect in the proceeding here because an expert in an immigration court is supposed to analyze the proposed expert's knowledge, skill, training, and experience. And that's exactly what the IJ did here. He provided a reasonable explanation for admitting Heller as a back witness only. And this was because her experience was running an NGO and was more aligned with training new attorneys and not necessarily country conditions in Iraq. The same goes for Smith. The IJ found that the lack of information on his educational background basically made it so that the court couldn't evaluate his skills as an expert. So the IJ provided a reasonable explanation. There was no defect in the proceedings. There was no indication of bias. But even if we were to say there was some kind of defect, Mr. Akrawi can't show any prejudice here. And that's because he can't establish that treating Heller and Smith as back witnesses only would have substantially, would have resulted in a substantially different outcome in the case. The IJ still considered the witness declarations and the facts for their truth. And it hasn't shown how the factual record would really be different. And this court's analysis in Nissan v. Barr is actually instructive on this point. While Nissan didn't necessarily deal with a due process claim, the IJ still considered the same witness, Smith, and his statements. And in that case, Smith was considered a back witness only. And it made, the court found it made no difference whether he was considered an expert or back witness and that there was no prejudice there and the decision by the agency was not irrational. So in all these cases that I've been able to find where Heller and Smith are involved as witnesses or experts, this court has never found in any of these cases that their treatment as back witnesses only has been a violation of due process or has been arbitrary. And so also going to their qualifications, this court in Salaka found that treating the experts or the witnesses as experts would not have altered the IJ's decisions because the IJ reviewed their declarations and ultimately concluded the government declarations comported more closely with the other evidence. And also the court found that the government experts' qualifications as PhDs did actually consider differently or were considerably different from Heller and Smith. So I guess if there are no further questions, we just ask that the court deny the petition for review. And thank you. Thank you. Any further questions? No. No, thank you.     Rebuttal. Rebuttal. Rebuttal. Rebuttal. Rebuttal. Rebuttal. I just want to touch on a couple of points really quickly. The first is a quoting from Marcus on what the standards should have been for the BIA. It says, the new evidence Marcus presents on appeal might help with the argument that Iraqi Christians or deportees without identification documents are at risk of detention and torture, but did not explain what about his claims that new evidence or the government evidence led to its decisions to deny remand. In other words, the court is saying that the BIA found that the evidence that was in the documents did speak to the question of the risk that he would face as somebody returning without ID and being a Christian, but didn't explain beyond that. I think that's almost exactly parallel to what happened in this case. The second point on the merits is on your question around the being a criminal. One of the government's own witnesses, Dr. Alban, who is accredited by the IJ, has given more credible testimony, says that the government of Iran will have a responsibility, I'm quoting, given the criminal records of some of the returnees, to ensure that the returnees do not present a danger to Iraqi society. Iraqis returning to Baghdad will certainly be subject to screening. And he goes on to say that if you have no Iraqi identification documents, that you will be, in quotes, held in government custody until these documents can be produced. Without government documents, they will not be able to freely move about the country. And Mr. Karay has no way to obtain such documents. He has no family. He's been gone from Iraq for 60,000 years, and he left under conditions in which it would be impossible for him to be able to obtain those documents. So I think in terms of the merits, I think that the ignoring of those facts, which the And finally, the two issues I just want to restate that are considered in Iraqis are what is contained in the new documents that speak to the question of people who are Christians and the safety of their return to Iraq, their ability to avoid torture, and what conditions will face somebody who lacks having proper identification. And I think on both of those points, the court in Iraqis stated that the information in the two 2017 reports was provided enough for everything. Thank you. Thank you both. Please release a ruling.